IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

EUGENE DIVISION

ROBIN LEE KNUTSON,

               Petitioner,         Civil No. 09-178-AA

          v.               ORDER

WARDEN, USP TERRE HAUTE,

               Respondent.

AIKEN, District Judge.

    Petitioner filed a petition for habeas corpus relief under 28 U.S.C. § 2254 challenging his convictions for two counts of Attempted Aggravated Murder and one count of Supplying Contraband.  Exhibit 101.

    Petitioner's convictions arose from an incident on March 20, 1998, while petitioner was in federal custody in the Lane County Jail.  At trial, the state presented evidence that petitioner had constructed a "zip gun" loaded with a 9 mm cartridge that he had smuggled into the jail.  Petitioner

escaped from his cell with the gun while a deputy and a nurse were delivering his medicine. Several correctional officers and the nurse testified that petitioner attempted to fire the gun at the deputy and nurse while threatening to kill them. Corrections officers were eventually able to subdue petitioner and seize the zip gun.

Petitioner was indicted for the offenses on June 24, 1998. Exhibit 102. The Lane County District Attorney's Office obtained writs of habeas corpus to secure petitioner's presence for arraignment on the charges. Exhibit 123. Federal officials would not honor the writs while their prosecution was ongoing. Id. After petitioner was convicted on the federal charges, federal officials contacted the Lane County District Attorney's office to indicate that they would honor a new writ. The state immediately sought and was issued a new writ, and petitioner was transferred to state custody and arraigned.

After petitioner's convictions, the court imposed two consecutive 120 month sentences of imprisonment for the counts of attempted aggravated murder and a consecutive 6 months for supplying contraband. Exhibit 101.[1]

Petitioner directly appealed his convictions, but the Court of Appeals affirmed without opinion, and the Oregon

---

[1]Petitioner is currently serving his federal sentence. It is not expected that petitioner will begin serving his state sentence until approximately 2032. See, Exhibit 101, Facesheet; see also, Response (#30) p. 3 fn. 1.

2 - ORDER

Supreme Court denied review. Respondent's Exhibits 103 - 107.

Petitioner filed a Fourth Amended Petition for Post-Conviction Relief, Exhibit 112, but the Marion County Circuit Court denied relief, the Oregon Court of Appeals affirmed without opinion and the Oregon Supreme Court denied review. Exhibits 140 - 144.

In this proceeding petitioner alleges the following grounds for relief:

Ground One: Speedy trial violation.
Supporting Facts: I demanded my rights to speedy trial noted that the first writ was ordered July 27, 1998. I was never arraigned I requested dismissal and counsel. In February 2000 and 25 of May 2000 still had not brought me to court after several state writs directing the U.S. Marshals office to release me to the custody of the State of Oregon - Every writ was disobeyed. The Marshals refused to obey a number of lawful writs and the state court judges and prosecutors refused to enforce the law.

Ground Two: Ineffective assistance of counsel.
Supporting Facts: He refused to attack speedy trial violation and the fact the court has ignored statutory requirements that mandate they arrest persons who refuse to obey writ until such time as the person sought is produced for court. (b) He also refused to obtain video for evidence from location of alleged crime, he did not raise facts that evidence had been altered and distroyed (sic).

Ground Three: Denied to produce witness and confront said witness. Also evidence.
Supporting Facts: (a) Refused to bring witness to court. (b) Time elapsed could not locait (sic) witness. (c) My attorney refused to aquire (sic) photo evidence because jail would not allow them to photo crime scene.

Ground Four: Evidence tampering and destruction.
Supporting Facts: During investigation evidence lost destroyed or just not collected. Photo of cell shows all the missing exculpatory evidence.

> Also during forensic examination evidence was
> placed into putty and photoed (sic) by doing all
> possible D.N.A. was removed and lost this being
> exculpatory evidence destroyed.

Petition (#1) p. 6-11.

Respondent moves to deny relief on petitioner's Ground Two (b), Three (b) and (c), and Four because petitioner procedurally defaulted these claims. Respondent argues that "insofar as petitioner's claims were presented to the Oregon States courts, relief on them was denied in decisions that were neither 'contrary to.' nor 'unreasonable applications of,' United States Supreme Curt precedent. Thus, petitioner should not be granted relief in this proceeding under 28 U.S.C. § 2254." Response (#30) p. 2.

Under 28 U.S.C. § 2254(b)(1), an application for a writ of habeas corpus "shall not be granted" unless "the applicant has exhausted the remedies available in the courts of the State[.]" Exhaustion occurs when a petitioner has given the state courts a "full and fair" opportunity to consider and resolve all federal claims. Keeney v. Tomayo-Reyes, 504 U.S. 1, 10 (1992). If a petitioner can present a claim to the state's Supreme Court, he must do so to properly exhaust that claim. O'Sullivan v. Boerckel, 526 U.S. 838, 844-45 (1999).

To "fairly present" a federal claim in state court, habeas petitioners must "include reference to a specific federal constitutional guarantee, as well as a statement of facts that entitle the petitioner to relief." Gray v.

4 - ORDER

*Netherland*, 518 U.S. 152, 162-63 (1996).; <u>see also</u>, <u>Castillo v. McFadden</u>, 399 F.3d 993, 1000 (9th Cir. 2005) (to exhaust his claim a petitioner must have presented his federal, constitutional issue before the state appellate courts "within the four corners of his appellate briefing."); <u>Baldwin v. Reese</u>, 541 U.S. 27 (2004).

Furthermore, to properly exhaust a claim the petitioner must present the federal claim to the state courts in a procedural context in which the claims' merits will be considered. <u>Castille v. Peoples</u>, 489 U.S.C.. 346, 351-52 (1989); <u>Roettgen v. Copeland</u>, 33 F.3d 36, 38 (9th Cir. 1984; <u>Turner v. Compoy</u>, 827 F.2d 526, 529 (9th Cir. 1987), cert. denied, 489 U.S. 1059 (1989).

The "mere fact that counsel failed to recognize it, does not constitute cause for a procedural default." <u>Murray</u>, 477 U.S. at 486. Similarly, because there is no constitutional right to counsel in post-conviction proceedings, the actions of PCR counsel cannot be constitutionally ineffective assistance amounting to "cause" to excuse a procedural default. <u>Coleman</u>, 501 U.S. at 752-57.

If a petitioner has failed to present a federal constitutional claim to the state's highest court (i.e., has failed to exhaust state remedies) and can no longer do so because of a procedural bar, that claim is procedurally defaulted. <u>Boerckel</u>, 526 U.S. t 848, citing <u>Coleman v. Thompson</u>, 501 U.S. 722, 731-32 (1991). Once a petitioner has

procedurally defaulted a claim, federal habeas corpus review is barred unless the petitioner can demonstrate: (1) cause for the procedural default, and (2) actual prejudice from the failure to present the constitutional issue in the state courts. <u>Wainwright v. Sykes</u>, 433 U.S. 72 (1977); <u>Murray v. Carrier</u>, 477 U.S. 748 (1986); <u>Hughes v. Idaho Bd. of Corr.</u>, 800 F.2d 905 (9th Cir. 1986).

Procedural defaults may also be excused by demonstrating a "fundamental miscarriage of justice." <u>Edwards v. Carpenter</u>, 529 U.S. 446, 451 (2000). To establish the fundamental miscarriage of justice exception to the exhaustion requirement requires a showing of actual innocence. <u>Schlup v. Delo</u>, 513 U.S. 298, 329 (1995); <u>Calderon v. Thompson</u>, 523 U.S.538, 559 (1998).

Petitioner did not present the ineffective assistance of counsel claims alleged in Ground Two (b) [attorney "refused to obtain video for evidence"], Ground Three (b) ["could not locate witness"] or (c) ["refused to acquire photo evidence"], or the "evidence tampering and destruction" claim alleged in Ground Four, to the state post-conviction courts.

Petitioner is now barred under Oregon law from filing any additional appeals or PCR proceedings, and therefore cannot "fairly present" any additional claims to the Oregon courts. Thus, he has procedurally defaulted the above referenced claims and has not demonstrated "cause and prejudice" for his procedural default or the fundamental miscarriage of justice

exception to the exhaustion requirement.  Therefore, relief on Ground Two (b), Ground Three (b) and (c), and Ground Four is denied.

Petitioner's federal habeas petition was filed after April 24, 1996, and is therefore governed by the Antiterrorism and Effective Death Penalty Act ("AEDPA"), 28 U.S.C. § 2254. Woodford v. Garceau, 538 U.S. 202, 210 (2003).  Under AEDPA, habeas relief may be granted only when a state court's decision was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" or "was based on an unreasonable determination of the facts in light of the evidence presented at the state court proceedings."  28 U.S.C. § 2254(d); Wiggins v. Smith, 539 U.S. 510, 520 (2003); Lockyer v. Andre, 538 U.S. 63 (2003); see also, Delgado v. Lewis, 223 F.3d 976, 982 (9th Cir. 2000).

A state court's decision is "'contrary to' federal law if it fails to apply the correct controlling Supreme Court authority or comes to a different conclusion ... [from] a case involving materially indistinguishable facts."  Pirtle v. Morgan, 313 F.3d 1160, 1167 (9th Cir. 2002) (citing Bell v. Cone, 535 U.S. 685, 694).  The Supreme Court has held that "a federal habeas court making the 'unreasonable application' inquiry should ask whether the state court's application of clearly established federal law was objectively unreasonable."  Williams v. Taylor, 529 U.S. 362, 409 (2000).

Petitioner alleges as Ground One that he was subject to a "speedy trial violation." Petition (#1) p. 6. Petitioner alleges that the U.S. Marshals unlawfully refused to release him to the custody of the state despite several requests and that state court judges and prosecutors "refused to enforce the law." Id.

Petitioner's counsel filed a motion to dismiss based upon a speedy trial violation, and argued at a hearing on August 8, 2000, that the delay between petitioner's indictment and his arraignment prejudiced petitioner. Exhibit 130, Defendant's Motion to Dismiss for Delay and Lack of Speedy Trail; Trial Transcript #33, Vol. 5, p 1-18. The motion was denied.

On direct appeal, petitioner asserted a single claim for relief as follows:   The trial court erred in denying defendant's motion to dismiss for violation of his right to a speedy trial under ORS 135.747, and/or Article I, Section 10, of the Oregon Constitution, and the Sixth Amendment of the United States Constitution. Exhibit 103, Appellant's Brief, at "i."   The court of appeals affirmed petitioner's convictions without opinion.

The state court decisions denying relief on petitioner's claim that his speedy trial rights were violated are entitled to deference under § 2254(d) because they are not "contrary to" or "objectively unreasonable applications" of Supreme Court law.  Moreover, I find that the state court decisions denying relief are supported by the record before the court

and correct on the merits.

In <u>Barker v. Wingo</u>, 407 U.S.514 (1972), the Court set forth a four part test to determine whether a defendant's speedy trial rights have been violated, including the "length of the delay, reason for the delay, the defendant's assertion of his rights, and prejudice to the defendant." <u>Id</u>, at 530. No single actor is "necessary or sufficient." <u>Id</u>. at 533.

In this case, the length of time between petitioner's indictment and his trial was 28 months. A 28 month period is not presumptively prejudicial. <u>See</u>, <u>State v. Coggin</u>, 126 Or App 230 (1994) (delay of twenty-seven months); <u>Vermont v. Brillon</u>, 129 S.Ct 1283 (2009)(conviction upheld despite a three year delay); <u>Barker v. Wingo</u>, <u>supra</u>, (conviction upheld despite a five year delay). In any event, none of the 28 months should be counted against the state, because the first 23 months were beyond the state's control and the petitioner himself either caused or contributed to the remaining five months.

The delay between petitioner's indictment on June 25, 1998, and his arraignment on May 19, 2000, resulted from petitioner being in the custody of federal officials who refused to deliver him to state court until resolution of the federal charges. Exhibit 123, Affidavit of Debra Vogt. Speedy trial rights are not violated where the reason for a delay in a defendant's trial is attributable to a cause "not within the state's control." <u>See</u>, <u>State v. Simpson</u>, 93 Or App 330, 332-

33, 762 P2d 323 (1988), affirmed on other grounds, 308 Or 102, 775 P2d 837 (1989).

Although arrest may trigger the right to a speedy trial, it does not do so unless the arrest is the start of a continuous restraint on the defendant's liberty, imposed in connection with the same charge on which he is eventually put to trial." Rachad v. Walsh, 300 F.3d 27, 36 (1st Cir. 2002), cert denied 537 U.S. 1236 (2003); see also, United States v. Hoslett, 998 F.2d 648, 652 (9th Cir. 1993).

Although, generally "the prosecution is not relieved of a duty to provide  a defendant with a speedy trial just because [the] defendant is in custody elsewhere," State v. Coffman, 59 Or App 18, 23, 650 P2d 144 (1982), the resulting delay should only weigh against the state if it makes no effort to secure his presence or fails to act with due diligence. See, State v. Miebach, 52 Or App 709, 718, 629 P2d 1312, rev den 291 Or 771 (1981).

In this case, the state attempted on three separate occasions to bring petitioner to court on the underlying charges but their request was refused because petitioner was in custody on his pending federal charges. Exhibit 123.

Thus for the time period between his indictment and arraignment, petitioner was not in custody imposed in connection with the state charges.  In addition the state made a good faith effort to bring petitioner before the court and the delay in doing so  was due to reasons not within the

10 - ORDER

state's control. Under these circumstances the delay between petitioner's indictment and his arraignment  is not attributable to the state.

Petitioner was arraigned on May 19, 2000, the day after the state learned that the federal prosecution had ended and trial was set for July 11, 2000 - less than 60 days later. Petitioner's trial began on October 10, 2000. However, petitioner twice moved to postpone his trial. Transcript of Proceedings Vol. 3, at 3; Vol. 4. Petitioner and his attorney also appeared in court on several occasions to address the potential need for counsel to withdraw from representation based on petitioner's own actions. Transcript of Proceedings, Vol. 4, at 4-6, 15-16 and Vol. 6 at 3-4. Thus, the "delay" between petitioner's arraignment and original trial date of and his trial on October 10, 2000, was the result of continuances granted at petitioner's request and not despite "the defendant's assertions of his [speedy trial] rights." Barker, 407 U.S. at 530.

Petitioner has also failed to establish that he was prejudiced prejudice by any delay in his proceedings. Petitioner's defense investigator testified at the motion to dismiss hearing that he had difficulty in obtaining a list of potential witnesses. Transcript of Proceedings Vol. 5, at 6. However the investigator further testified that he did not know whether the witnesses would have had helpful testimony. Id. at 8.

11 - ORDER

Even if petitioner could show that the potential witnesses had favorable testimony, he failed to establish that it was the delay in the arraignment which made finding them difficult. The defense investigator testified only that he thought the delay "might have had something to do with the passage of time." Transcript of Proceedings Vol 5, at 7-8. Speculation about what potential witnesses might have said coupled with speculation about the reason the potential witnesses were not located falls far short of demonstrating that petitioner was prejudiced from the delay between his indictment and his arraignment.

Petitioner has failed to establish entitlement to relief under the Barker analysis. The length of delay in trying petitioner was not presumptively prejudicial and was reasonable under the circumstances. The reason for the pre-arraignment delay was due to circumstances not attributable to the state, and the continuances of the trial date were at petitioner's request. Petitioner has failed to establish any prejudice from the delay.

At his post-conviction trial, petitioner argued that his trial counsel was ineffective for failing to argue a speedy trial violation under ORS 135.775, the Interstate Agreement on Detainers (IAD).

Assuming petitioner is attempting to raise that claim in

this proceeding[2] the PCR court decision denying relief is entitled to deference and is correct for the reasons set forht below.

The IAD "establishes procedures by which one jurisdiction may obtain temporary custody of a prisoner incarcerated in another jurisdiction for the purpose of bringing that prisoner to trial." State v. Burss, 316 Or 1, 3 n.1, 848 P2d 596 (1993); State v. Cox, 12 Or App 215, 219-20, 505 P.2d 360, rev den (1973) (federal government adopted IAD effective March 1971); ORS 135.775, Article II(a) ("state" includes "the United States of America").

Oregon had no authority under the IAD to request petitioner's transfer until the resolution of the federal charges in May 2000. See, ORS 135, 775, Article IV(a) (receiving state "shall be entitled to have a prisoner against whom the officer has lodged a detainer and who is serving a term of imprisonment *** made available *** upon the presentation of a written request for temporary custody); Freeman v. Hand, 158 Or App 489, 491, 974 P2d 788, rev den 328 Or 594 (1999) (IAD applies only to persons serving a sentence of imprisonment").

The term "imprisonment" does not include being held in custody for the purpose of prosecution. State v. Cox, supra,12

---

[2]The claim is not specifically alleged. However, petitioner's Ground Two (a) could arguably be interpreted as an attempt to raise the PCR claim.

Or App at 219; see also, United States v.Reed, 620 F2d 709, 711 (9th Cir. 1980) (IAD does not apply to pretrial detainee). At the time the state sought to secure petitioner for trial, he was not yet serving a "term of imprisonment."

Therefore, The state of Oregon had no authority under the IAD to secure petitioner's presence at an arraignment prior to the conclusion fo the federal prosecution on May 18, 2000.

Accordingly petitioner's trial counsel was not ineffective for failing to make IAD argument in connection with the motion to dismiss for violation of petitioner's right to a speedy trial.

In Ground Two (a) petitioner alleges that his counsel was ineffective because he "refused to attack" [the] speedy trial violation."   Petition (#1) p. 7-8.   This claim fails as a factual matter.

The speedy trial issue was raised by petitioner's counsel. Petitioner's counsel filed a "Motion to Dismiss for Delay and Lack of Speedy Trial" and argued at an August 8, 2000, hearing that the delay between petitioner's indictment and his arraignment had prejudiced petitioner. Therefore, the PCR court decision denying relief on this claim, is entitled to deference and is correct on the merits.

"[I]t is past question that the rule set forth in Strickland, qualifies as 'clearly established Federal law, as determined by the Supreme Court of the United States.'"

14 - ORDER

<u>Williams v Taylor</u>, <u>supra</u> at 391.  Under <u>Williams</u>, a petitioner may therefore be granted habeas corpus relief on a claim of ineffective assistance of counsel only if the decision of the state court was contrary to, or an unreasonable application of <u>Strickland v. Washington</u>, 466 U.S. 668 (1984).

Under <u>Strickland</u>, a claim that counsel's assistance was so ineffective as to require reversal of a conviction has two components.  First, the petitioner must show that counsel's performance was deficient; second, the petitioner must show that the deficient performance prejudiced the defense.  <u>Id</u>. at 687.

The first prong of the <u>Strickland</u> test required the petitioner to demonstrate that "counsel's representation fell below an objective standard of reasonableness.  <u>Strickland</u>, <u>supra</u> at 688.  The second component of the test requires the petitioner to demonstrate that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." <u>Id</u>., at 694.  A "reasonable probability" is one that is sufficient to undermine confidence in the outcome." <u>Id</u>.

When considering ineffective assistance of counsel claims under 28 U.S.C. § 2254(d), "it is the habeas applicant's burden to show that the state court applied <u>Strickland</u> to the facts of his case in an objectively unreasonable manner." <u>Woodford v. Visciotti</u>, 537 U.S. 19, 25 (2002) (per curiam).

In Ground Three (a) petitioner alleges that his trial

counsel performed deficiently by "refusing to bring a witness to court." Petition (#1) p. 9.  This claim was presented to the post-conviction court in petitioner's Fourth Amended Petition (for Post-conviction Relief). Exhibit 112, p. 2; see also, Exhibit 114, PCR Trial Memorandum, p. 8.

   In denying relief on this claim, the PCR court found:

   1.  The only witness that petitioner alleges trial
   counsel should have secured but did not was
   Marshall Stuckey.  Trial counsel discussed with
   petitioner calling Marshall Stuckey as a witness at
   trial.  Trial counsel was concerned that Stuckey's
   felony convictions would be used to impeach him,
   and petitioner agreed with trial counsel.  Trial
   counsel called other witnesses on petitioner's
   behalf, and petitioner testified on his own behalf.
   Trial counsel acted reasonably in not calling
   Stuckey as a witness.

                          ****

   1.  Based on the findings of fact set forth above,
   in the underlying criminal proceedings resulting in
   petitioner's conviction, petitioner was not denied
   the right to effective assistance of counsel, as
   guaranteed by either the United States Constitution
   and as articulated by the United States Supreme
   Court in Strickland v. Washington, 466 U.S. 668
   (1984) or the Constitution of the State of Oregon.

                          ****

   4.  Petitioner did not prove any of his claims by
   a preponderance of the evidence.

Exhibit 138, Findings of Fact, Conclusions of Law, at 3 - 5.

   As noted above, state court decisions are entitled to deference unless they are "contrary to" or "objectively unreasonable" applications of Supreme Court holdings. Andrade, 538 U.S. at 70-75.  In petitioner's case, the PCR decision, which was affirmed without opinion by the Oregon Court of

Appeals and denied review by the Oregon Supreme Court, is entitled to deference under § 2254 (d)(2) on the factual findings, and under § 2254 (d)(1) on the legal conclusion, because it is not contrary to, nor an unreasonable application of Strickland.    In addition, the PCR court decision is supported by the record before the court and correct on the merits.

Petitioner's trial counsel stated in an affidavit to the post-conviction court that he and petitioner discussed calling Marshall Stuckey as a witness but decided "it would be better not to call [him] as a witness."    Exhibit 129, Affidavit of John Kolego, at 1-2.    "I was concerned that Mr. Stuckey's testimony would be impeached through the use of his prior felony convictions and that he would inadvertently open the door for the use of the details of Mr. Stuckey's prior offenses as impeachment for bias.    I believed that the potential prejudicial effect of Mr. Stuckey's testimony would outweigh any probative value and, at the time, Mr. Knutson agreed with me." Id.

Trail counsels' tactical decisions are entitled to deference, and a "disagreement with counsel's tactical decisions does not provide the basis for declaring that representation was constitutionally deficient." Raley v Ylst, 444 F.3d 1085, 1091 (9th Cir. 2006); see also, Bell v. Cone, 535 U.S. 685, 695 (2002)(counsel's tactical decisions are entitled to a presumption that they constitute "sound trial

strategy"); <u>Bailey v. Newland</u>, 263 F.3d 1022, 1028-29 (9th Cir. 2001).

I find that counsel's tactical decision not to call Stuckey was the result of reasonable investigation, Exhibits 118, 119, and 120, and was reasonable under the circumstances.

In addition, I find that petitioner was not prejudiced by the decision not to call Stuckey as a witness. At his post-conviction trial, petitioner presented an affidavit from Marshall Stuckey. Exhibit 122. The statements in the affidavit relate to what Stuckey believed occurred after the fact of the underlying crimes, and are directly contradictory to the testimony provided by other inmate witnesses. <u>Id</u>.

Given Stuckey's criminal history and the contrary testimony provided by other inmate witnesses, I find that Stuckey's testimony would not have had a tendency to affect the outcome of the trial. Therefore, petitioner has failed to establish the prejudice prong of the Strickland analysis as to Ground Three (a).

<u>Summary:</u> Petitioner procedurally defaulted Grounds Two, Three (a) and (b), and Four, and has not demonstrated any cause and prejudice to excuse the procedural default as to those claims or established entitlement to the fundamental miscarriage of justice exception to the exhaustion requirement. The state court findings as to Grounds One, Two (a), and Three (a) are entitled to deference and are correct on the merits.

Based on all of the foregoing, Petitioner's Petition (#1)

is denied.   This proceeding is dismissed.

IT IS SO ORDERED.

## Certificate of Appealability

The court certifies that the petitioner has not made a substantial showing of the denial of a constitutional right pursuant to 28 U.S.C. § 2253 (c) (2).   This cause is not appropriate for appellate review.


DATED this  11  day of March, 2010.

/s/ Ann Aiken
Ann Aiken
United States District Judge